UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SHANTE ORR,

        Plaintiff,                                        **COMPLAINT**

   -against-                                         **JURY TRIAL DEMANDED**

THE CITY OF NEW YORK and EDWICH JASMIN,
Individually and in his capacity as Captain for the
Department of Correction,

        Defendant.
------------------------------------------------------------------X

Plaintiff Shante Orr ("Ms. Orr" or "Plaintiff") by and through her attorneys Stagg Wabnik Law Group LLP, complaining of Defendant the City of New York ("City" or "Defendant"), and Edwich Jasmin ("Jasmin"), individually and in his capacity as Captain for the New York City Department of Correction (collectively with the City as "Defendants") herein alleges as follows.

## NATURE OF THE ACTION

1. This is an action to remedy Defendants' unlawful discrimination and harassment in violation of Title 7 of the Civil Rights Act of 1964, New York Executive Law § 296 (New York State Human Rights Law), and New York City Administrative Code § 8-107 (New York City Human Rights Law).

2. Ms. Orr has worked for the New York City Department of Correction ("NYCDOC") for approximately sixteen years as a Correction Officer, where she has exhibited exemplary service. In or about May 2022, Ms. Orr was assigned to modified duty within the NYCDOC Transportation Division on Rikers Island. Once assigned to the Transportation

Department, Ms. Orr applied to be placed at the Transportation Division store ("Store"), where Correction Officers sell food.

3. Ms. Orr's assignment to the Store required approval from Defendant Edwich Jasmin, who was a Captain and Administrative Supervisor in the Transportation Division—working approximately 35 years for the NYCDOC. Jasmin, as a Captain and Administrative Supervisor in the Transportation Division, supervised the Store as part of his duties, making Jasmin Ms. Orr's supervisor.

4. While assigned to the Store, for a period of over six months, Ms. Orr was subjected to a continuous and egregious pattern of sexual advances and assaults from Jasmin. For example, Jasmin explicitly propositioned Ms. Orr for sex on several occasions, unzipped his pants to expose his penis on multiple occasions, and forcibly kissed and touched her several times. Worse yet, Jasmin flexed his power and influence at the Transportation Department to intimidate Ms. Orr, creating a scenario where she felt trapped and open to retaliation if she complained about it to higher authorities.

5. Due to Jasmin's position and supervisory capacity over Ms. Orr, the City is liable for Jasmin's conduct. In addition, the City, through the NYCDOC, further created a hostile work environment for female Corrections Officers, including Ms. Orr, by permitting a machismo culture to develop within its ranks and enabling harassment of female Corrections Officers by their direct supervisors to continue unchecked. The City, through the NYCDOC, was aware of Jasmin's harassing tendencies based on others lawsuits against him and news reports of similar conduct. As a result of Jasmin's conduct as Ms. Orr's supervisor, and the hostile environment that the City enabled and perpetuated, Ms. Orr was subjected to continuous sexual assaults and harassment for over six months, resulting in severe emotional distress and humiliation.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 28 U.S.C. § 1331, federal question, as Plaintiff claims violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

7. Venue is proper in this District pursuant to Title 28 U.S.C. § 1391(b) and (c) as Plaintiff resides within this District.

## ADMINISTRATIVE REQUIREMENT

8. Plaintiff filed an EEOC Charge on August 9, 2023, alleging the claims set forth in this Complaint.

9. The EEOC forwarded the Charge to the United States Department of Justice, Civil Rights Division for review.

10. Plaintiff received a Right to Sue notice from the United States Department of Justice, Civil Rights Division on August 16, 2024, notifying Ms. Orr that she has 90 days from that date to file an action under federal law for discrimination and harassment.. (Right to Sue Notice attached hereto).

11. This Complaint has been filed within 90 days of receipt of the Right to Sue Notice.

## PARTIES

12. Defendant the City of New York was and still is a municipal corporation.

13. Defendant Edwich Jasmin was and is an employee for the City of New York at the New York City Department of Correction. During all relevant times, Jasmin held the position of Captain and was an Administrative Supervisor within the Transportation Division of the NYCDOC.

14. Plaintiff is an individual residing in Richmond County in the State of New York and employed by Defendant at the New York City Department of Correction, specifically spending the last seventeen years as a Correction Officer.

15. Plaintiff is a female, her gender and sex make her a protected class member.

## STATEMENT OF FACTS

16. Plaintiff began working for the City in or about 2007 as a corrections officer for the NYCDOC.

17. In or about May 2022, Plaintiff was assigned to the Transportation Division while on modified duty. Plaintiff first met Jasmin while interviewing for a position at the Transportation Division Store ("Store"), where Correction Officers sell food.

18. Jasmin was an Administration Supervisor in the Transportation Division, and in that capacity, was in charge of the Store; he has been employed by the City since 1989.

19. Jasmin's pattern of harassment began as purported "jokes," but intensified in late summer 2022 to include unwanted sexual comments, propositions for sex, and exposing his penis.

20. Plaintiff believed that to keep her job and position, she would have to tolerate the offensive comments and physical advances and do her best to deal with the harassment.

21.     In early September 2022, Plaintiff made a request to Jasmin to renew her Gate One pass (parking pass) since it was about to expire.  Upon making the verbal request, Jasmin replied, "I'm Captain Jasmin; I could do that, I could do whatever I want – but what can you do for me?" Jasmin continued by stating, "That's how the world works; you do for me, I do for you.  I'm Captain Jasmin; I can do whatever-- it's now on you."  After taking a Pass from a stack rubber banded together, Jasmin stated, "If you have any problems, anyone gives you trouble, you tell them to call me because you're good, you're under Captain Jasmin – now tuck it away, put it in your shirt so no one sees."

22.     On another occasion, Jasmin and Plaintiff were in his office.  Jasmin proceeded to unbuckle his pants, exposed his penis to Plaintiff and stated, "What are you gonna do."  Plaintiff removed herself from the interaction.

23.     Jasmin regularly sent Plaintiff text messages with unprofessional statements, such as referring to Plaintiff as "hun" and including inappropriate emojis (happy face blowing a kiss, flowers, and wine glass.)

24.     In or about late September 2022, Jasmin groped Plaintiff and tried to unbuckle her pants, stating, "You're going to be my woman."  Fearing she might lose her job, Plaintiff did not want to make Jasmin angry.  Plaintiff told Jasmin that they could not do anything because she was wearing a Faja—a girdle-like undergarment.

25.     In October 2022, a relative of Plaintiff died, and she was given several days off to help with funeral arrangements and attend the funeral.  During that time, Jasmin texted Plaintiff, "I hope you miss me the way I miss you," but Plaintiff did not respond.

26.     In or around late October, Jasmin called Plaintiff and indicated that he was angry Plaintiff ignored his text.  Jasmin demanded to know why Plaintiff ignored his text, to which

Plaintiff responded that she was handling funeral arrangements. Jasmin replied, "Alright, good, now when you get back to work, you gonna be ready for me?" Jasmin continued, "You know what I'm talking about. You make sure you don't have that thing [Faja] on – and if you do have it on, you better wear the one with a hole in it."

27. Jasmin routinely invited Plaintiff into his office, closed the door, and indicated that he would "take care of her" if she had sex with him.

28. Jasmin sent Plaintiff one hundred dollars on Cash App and stated that he did that "to show you what I could do for you, but that is just a tiny amount of what I could do for you."

29. On November 9, 2022, Jasmin sexually assaulted Plaintiff in his office when he grabbed Plaintiff by the belt and kissed Plaintiff on the mouth despite her efforts to turn away. Jasmin then proceeded to unzip his pants, walk towards Plaintiff and stated that he was "so horny for [Plaintiff]" and that he "could not take it." Jasmin proceeded to touch Plaintiff and put his hands on his crotch. Jasmin finally let go after someone began knocking on the office door.

30. On November 22, 2022, Jasmin came to the store and declared, "So you're just not gonna make time for me."

31. On November 30, 2022, after Plaintiff continued to refuse Jasmin's advances, Jasmin retaliated by taking away Plaintiff's Gate One Pass.

32. On December 1, 2022, Jasmin came to the Store window and asked Plaintiff, "When are you going to give me some?"

33. On December 5, 2022, Jasmin called Plaintiff's phone while she was in the Shop, and Jasmin asked Plaintiff whether she was "ready for [his] lollipop." Plaintiff ignored that statement and commented that the noise coming from Jasmin's phone sounded like a party. Jasmin

6

invited Plaintiff to his office and stated the office had strobe lights and music, which Plaintiff declined. Jasmin replied, "Ok, maybe one day you'll have time for me."

34. On December 7, 2022, Jasmin approached Plaintiff in the Store and stated that Plaintiff was "taking too long to give him some" and that "soon his penis won't work anymore."

35. On December 7, 2022, Captain Jasmin again assaulted Plaintiff by grabbing her belt and pulling her closer to him.

36. On December 16, 2022, while Plaintiff was eating fish and shrimp for dinner inside the Store, Jasmin asked Plaintiff for a piece of her fish, insinuating her private area. Plaintiff offered to make Jasmin a plate of fish, and Captain Jasmin responded, "No, I want yours," and "Oh, it's like that."

37. On December 19, 2022, Jasmin ordered Plaintiff into his office, where he again assaulted Plaintiff. Jasmin locked the door to his office, walked up to Plaintiff, grabbed her belt, and asked Plaintiff why Plaintiff did not want to give him "any," referencing sex. Jasmin then grabbed Plaintiff's face and tried to kiss her.

38. On December 20, 2022, Jasmin again assaulted Plaintiff when he, despite Plaintiff's protests and also stating that she was sick, kissed Plaintiff on the cheek, grabbed Plaintiff's buttocks, and stated, "You're sick, but everything down there is ok," while looking at her vaginal area.

39. On December 29, 2022, Jasmin called Plaintiff and requested Plaintiff go to his office. Plaintiff refused, and Jasmin responded, "I just wanted to let you know it's hard [referring to his penis]; when are we going to do this?"

40. On January 2, 2023, Jasmin demanded Plaintiff give him a New Year's kiss and stated, "Get up right now and come give your man a kiss." When Plaintiff refused, Jasmin stated,

"Why do you treat me so badly?"; "We're not going to start the year like this, are we?" and "You're so mean to me."

41. On January 4, 2023, Jasmin again assaulted Plaintiff by kissing her on the back of the neck.

42. On January 6, 2023, Jasmin pushed his chest into Plaintiff's chest and declared to other Officers present, "Did y'all see she didn't move out of the way." Plaintiff let him know that such action was unacceptable.

43. On January 6, 2023, Jasmin attempted to intimidate Plaintiff by getting close to her face and declaring that he wanted to fight Plaintiff. Jasmin stopped when a colleague interjected by asking Jasmin, "Why are you all in her face?"

44. On January 9, 2023, Jasmin propositioned Plaintiff for sex when he offered Plaintiff two hundred dollars and said, "I cannot wait any longer," and that he "wanted" Plaintiff "so badly."

45. On January 11, 2023, Jasmin went to the Store to find Plaintiff. Plaintiff hid from Jasmin to avoid further harassment and could overhear a conversation between Captain Jasmin and a colleague. Plaintiff's colleague told Jasmin that the Plaintiff was not feeling well and was taking a break. Jasmin replied, "Oh, she must be pregnant."

46. On January 19, 2023, Plaintiff met Jasmin and Captain Hillman at the office to sign paperwork related to mandatory training. Once Captain Hillman left, Jasmin turned to Plaintiff, bit his lip, and said, "Boy, I cannot wait to fuck you; just let me know when so I can take a pill. I do not want to disappoint you."

47. On March 9, 2023, Plaintiff was no longer working for Transportation Division. Plaintiff requested the return of Gate One Pass. Jasmin indicated that he would return Plaintiff's Gate One Pass if she had sex with him. Plaintiff refused and Jasmin replied, "You can't treat me

how you treat these other guys that you control around here and have them taking you on vacations. You need to leave that guy [referring to Plaintiff's boyfriend]. He doesn't even know a vacation isn't enough for you. You think I don't know what you've been doing. I know everything you do. I have tags on you."

48. Even though Plaintiff filed a Charge with the EEOC in August 2023, upon information and belief, no investigation or inquiry has been conducted, and to this day, no corrective action has been taken.

49. For six months, Plaintiff had to endure Jasmin's overt and egregious sexual harassment—sexual harassment from her supervisor while working for the Transportation Division.

50. Because Jasmin had and bragged about his power at the DOC, Plaintiff had no choice but to endure, resist, deflect and avoid Jasmin's sexual propositions, assaults, and comments, as she was afraid he would use his power to ruin her career.

51. As a result of the six months of intense and egregious sexual harassment, Plaintiff suffered severe emotional distress, humiliation, and loss of enjoyment of life.

52. Captain Jasmin used his power and authority to sexually exploit women, including Plaintiff, and believed he was entitled to do whatever he wanted to women, especially those women under his supervision, like Plaintiff.

53. Captain Jasmin's use of power to exploit Plaintiff was constant and continuous, and sick and horrific.

54. The City, through the NYCDOC, knew full well that Jasmin sexually harassed women in the past and continually failed to provide proper corrective action, which allowed Jasmin to continue his harassment of other women, including Plaintiff.

## AS AND FOR THE FIRST CAUSE OF ACTION AGAINST THE CITY
### (42 U.S.C. § 2000 – Title VII of the Civil Rights Act of 1964 Against the City)
### Hostile Work Environment – Sex

55. Ms. Orr hereby repeats, realleges, and reiterates all of the allegations stated above as if fully set forth herein.

56. Title VII of the Civil Rights Act of 1964 (as amended), sets forth that it is an unlawful employment practice for an employer to "…discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of such individual's …sex…."

57. Ms. Orr is a woman and is protected by Title VII.

58. In May 2022, Ms. Orr, a Corrections Officer with NYCDOC for approximately sixteen years, was assigned to the Transportation Division.

59. Jasmin was Ms. Orr's supervisor.

60. In his capacity as supervisor to Ms. Orr, Jasmin, for at least six months, from the Summer of 2022 through March 2023, subjected Ms. Orr to sexual harassment and discrimination.

61. As discussed in detail above, Jasmin made sexual propositions to Ms. Orr many times, exposed his penis to her, forcibly kissed and touched her, and constantly harassed her about having sex with him.

62. Jasmin used his power over Ms. Orr when engaging in the sexual harassment of her, believing and espousing that he was untouchable.

63. Jasmin abused his authority as Plaintiff's direct superior, subjecting Plaintiff to continuous harassment. The City is liable for Jasmin's actions because he was the Administrative Supervisor of the Transportation Division and was Plaintiff's direct supervisor.

64. The City had prior knowledge that Jasmin was a predator of women, and that other women in the past have made complaints about Jasmin's sexual harassment and that there have been news reports about his sexual harassment. Although the City was well aware of Jasmin's predatory conduct, it failed to take proper corrective action and allowed Jasmin to continue his sexist and predatory sexual harassment against Plaintiff.

65. The harassment from Jasmin affected Plaintiff's conditions of employment and created a hostile work environment based on sex.

66. As a result of the harassment and creation of a hostile work environment based on Plaintiff's sex, Plaintiff suffered extreme emotional distress, humiliation and embarrassment, anxiety, depression, sleeping and eating problems, and other psychological and physical issues related to psychological distress.

67. The City's and Captain Jasmin's acts were a proximate cause of injuries sustained by Ms. Orr.

68. Plaintiff is entitled to an award of compensatory and monetary, and is entitled to attorney's fees and costs.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE CITY IN VIOLATION OF NEW YORK EXECUTIVE LAW § 296**
**(Sex Discrimination/Harassment)**

69. Ms. Orr hereby repeats, realleges, and reiterates all of the allegations stated above as if fully set forth herein.

70. The New York State Human Rights Law section 296 prohibits employers from discriminating against individuals in compensation or in terms, conditions or privileges of employment based on sex.

71. Ms. Orr is a woman and is protected by the New York State Human Rights Law.

72. In May 2022, Ms. Orr, a Corrections Officer with NYCDOC for approximately sixteen years, was assigned to the Transportation Division.

73. Jasmin was Ms. Orr's supervisor.

74. In his capacity as supervisor to Ms. Orr, Jasmin, for at least six months, from the Summer of 2022 through March 2023, subjected Ms. Orr to sexual harassment and discrimination.

75. As discussed in detail above, Captain Jasmin made many sexual propositions to Ms. Orr, exposed his penis to her, forcibly kissed and touched her, and constantly harassed her about having sex with him.

76. Jasmin used his power over Ms. Orr when engaging in the sexual harassment of her, believing and espousing that he was untouchable.

77. Based on the above, Ms. Orr was discriminated, sexually harassed, and subjected to a hostile work environment based on her sex in violation of New York Executive Law § 296.

78. Ms. Orr was treated less well because she was a woman, e.g., being sexually harassed for at least six months, in violation of New York Executive Law § 296.

79. The City is liable for Jasmin's actions because Jasmin was Plaintiff's supervisor, as he was the Administrative Supervisor of the Transportation Division of the DOC.

80. The City is liable for Jasmin's actions because it knew full well that Jasmin was a sexual predator and that other women made complaints about his sexual harassment; there were also reports in the media about Jasmin's conduct.

81. The City failed to properly investigate and provide corrective action to prevent sexual harassment at the DOC by Jasmin.

82. As a result of the discrimination, harassment and hostile work environment, Ms. Orr experienced extreme emotional distress, humiliation and embarrassment, anxiety, depression, sleeping and eating problems, and other psychological and physical issues related to psychological distress.

83. The City was well aware of Captain Jasmin's history of sexual harassment but failed to address the issue.

84. The City's and Captain Jasmin's acts were a proximate cause of injuries sustained by Ms. Orr.

85. Ms. Orr is entitled to compensatory damages for emotional distress and mental anguish.

86. Ms. Orr is also entitled to attorney's fees and costs and, due to the egregious nature of the discrimination.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS IN VIOLATION OF NEW YORK CITY ADMINISTRATIVE LAW § 8-107
### (Sex Discrimination and Harassment)

87. Ms. Orr hereby repeats, realleges, and reiterates all of the allegations stated above as if fully set forth herein.

88. The New York City Human Rights Law, 8-107 of the New York City Administrative Code, states that it shall be an unlawful discriminatory practice "for an employer or an employee…because of the actual…gender… of any person … to discriminate against such person in compensation or in terms, conditions or privileges of employment.

89. Ms. Orr is a woman and is protected by the New York City Human Rights Law.

90. In May 2022, Ms. Orr, a Corrections Officer with NYCDOC for approximately sixteen years, was assigned to the Transportation Division.

91. Jasmin was the Administrative Supervisor of the Transportation Division of the NYCDOC, and was Ms. Orr's supervisor between May 2022 and March 2023.

92. In his capacity as supervisor to Ms. Orr, Jasmin, for at least six months, from the Summer of 2022 through March 2023, subjected Ms. Orr to sexual harassment and discrimination.

93. As discussed in detail above, Jasmin made many sexual propositions to Ms. Orr, exposed his penis to her, forcibly kissed and touched her, and constantly harassed her about having sex with him.

94. Jasmin used his power over Ms. Orr when engaging in the sexual harassment of her, believing and espousing that he was untouchable.

95. Based on the above, Ms. Orr was discriminated against, sexually harassed and subjected to a hostile work environment because of her gender in violation of New York City Administrative Law § 8-107.

96. Ms. Orr was treated less well because she was a woman, e.g., being sexually harassed for at least six months, in violation of New York City Administrative Law § 8-107.

97. As a result of the discrimination, sexual harassment and hostile work environment based on gender, Ms. Orr experienced extreme emotional distress, humiliation and embarrassment, anxiety, depression, sleeping and eating problems, and other psychological and physical issues related to psychological distress.

98. The City was well aware of Jasmin's history of sexual harassment, but failed to address the issue, and allowed Jasmin to continue his long-storied and reported harassment of women at the NYCDOC.

99. The City's and Jasmin's acts were a proximate cause of injuries sustained by Ms. Orr.

100. Ms. Orr is entitled to compensatory damages for emotional distress and mental anguish.

101. Ms. Orr is also entitled to attorney's fees and costs and, due to the egregious nature of the discrimination, is entitled to punitive damages as against Jasmin.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST THE CITY
**(Sexual Harassment- Violation of New York Executive Law § 296(1)(h) against the City)**

102. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

103. Executive Law § 296(1)(h) provides that: "It shall be an unlawful discriminatory practice…for an employer…to subject any individual to harassment because of an individual's…sex…regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims…."

104. Plaintiff is a woman and belongs to a protected group.

105. The City, through the NYCDOC, discriminated against Plaintiff and created a hostile work environment because of Plaintiff's sex in violation of Executive Law § 296(1)(h) because Plaintiff's supervisor, Jasmin, subjected Plaintiff to continuous, intense and egregious sexual harassment, and because Jasmin was Plaintiff's direct supervisor, the City is liable for his actions.

106. The City is also liable for Jasmin's actions by permitting him to abuse his authority and subject Plaintiff and other women to a continuous pattern of sexual assaults and harassment, and failing to address the situation after being informed and advised by other women about Jasmin's predatory behavior against women.

107. Plaintiff has endured a long history of sexual harassment by Jasmin throughout her tenure at the Store, examples of which are stated above.

108. Jasmin abused his authority as Plaintiff's direct superior, subjecting Plaintiff to continuous sexual harassment.

109. The sexual harassment from Jasmin affected Plaintiff's conditions of employment, and created a hostile work environment.

110. Through NYCDOC's actions, the City created a hostile work environment for Plaintiff, creating the circumstances that led to harassing, embarrassing, and humiliating Plaintiff based on Plaintiff's sex and by failing to provide corrective action even though the City knew that Jasmin was predatory against women and had a history of sexually harassing women.

111. The NYCDOC allowed, condoned and permitted the harassment of Plaintiff as described above because of her sex, because Jasmin was Plaintiff's supervisor and because the City knew of Jasmin's sexual harassment history and did nothing to correct the situation and prevent him from harassing women in the future, such as Plaintiff.

112. Based on the foregoing actions, Defendant created and condoned a hostile work environment for Plaintiff because of her sex in violation of Executive Law § 296(1)(h).

113. As a direct and proximate result of Defendants' harassment and hostile work environment in violation of Executive Law § 296(1)(h), Plaintiff suffered, and continues to suffer, extreme emotional distress, humiliation and embarrassment, anxiety, depression, sleeping and eating problems, and other psychological and physical issues related to psychological distress.

114. As a direct and proximate result of Defendants' unlawful and discriminatory actions in violation of Executive Law § 296(1)(h), Plaintiff is entitled to attorneys' fees and costs.

## AS AND FOR A FIFTH CAUSE OF ACTION AS AGAINST JASMIN

**(Aiding and Abetting Discrimination – Violation of NY Executive Law § 296(6))**

115. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

116. The City, as Plaintiff's employer, violated New York Executive Law section 296 by having

one of its supervisors, Jasmin, sexually harass Plaintiff for over six months.

117. Jasmin made many propositions for sex to Plaintiff, exposed his penis, sexually assaulted Plaintiff and continuously sought to have sex with Plaintiff even though she clearly and forcefully rejected his advances.

118. Jasmine aided and abetted the discrimination and harassment of the City, i.e., employer, by being the active participant in the sexual harassment of Plaintiff.

119. An employee aids and abets the discrimination of an employer by being the active participant of the harassment and/or discrimination, and Jasmin was the active participant in the City's discrimination and harassment of Plaintiff.

120. As a result of Jasmin's aiding and abetting of sexual harassment, Plaintiff suffered severe emotional distress, humiliation and embarrassment, and is entitled to compensatory damages, attorney's fees and punitive damages as against Jasmin.

## AS AND FOR A SIXTH CAUSE OF ACTION
## <u>AGAINST DEFENDANT</u>
**(Employer Liability For Discriminatory Conduct By Employees Pursuant to New York City Administrative Code § 8-107(13))**

121. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

122. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of 8-107 of this New York City Administrative Code where (1) the employee or agent exercised managerial or supervisory responsibility or (2) the employer knew of the employee's or agents discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who

exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct. 8-107(13)(b).

123. Plaintiff is a woman and is protected by the New York City Human Rights Law.

124. Jasmin, while Plaintiff's supervisor, sexually harassed Plaintiff as described above.

125. The City is liable for Jasmin's sexual harassment of Plaintiff because he exercised managerial and supervisory responsibility, and had supervisory authority over Plaintiff.

126. The City is liable for Jasmin's sexual harassment of Plaintiff because the City knew or should have known of Jasmin's prior incidents of sexual harassment and predatory conduct, and did nothing to prevent future acts of sexual harassment by Jasmin from continuing.

127. Captain Jasmin abused his authority as Plaintiff's direct superior, subjecting Plaintiff to continuous harassment.

128. The harassment from Captain Jasmin affected Plaintiff's conditions of employment.

129. The City failed to exercise reasonable diligence to prevent discriminatory conduct of its employees' discrimination against Plaintiff.

130. As a proximate result of The City's actions, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish.

131. As a proximate result of The City's actions, Plaintiff is entitled to compensatory damages.

132. Plaintiff is entitled to recover reasonable attorneys' fees and costs.

133. The City's conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights, entitling Plaintiff to punitive damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court grant judgment in his favor

and against Defendants:

    A.    Declaring that Defendants engaged in unlawful employment practices prohibited by the state and local laws;

    B.    Awarding Plaintiff damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all non-monetary, compensatory damages, including but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering and other physical and mental injuries;

    C.    Awarding Plaintiff damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all monetary losses, including but not limited to loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief;

    D.    Awarding Plaintiff damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus pre-judgment interest;

    E.    Awarding Plaintiff punitive damages, in an amount to be determined at trial;

    F.    Awarding Plaintiff costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

    G.    Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
       November 12, 24

                                          Stagg Wabnik Law Group LLP

                                          By: _____
                                              David Ehrlich (de-9786)
                                              Scott Clark (sc-9218)
                                          *Attorneys for Plaintiff*
                                          401 Franklin Avenue, Suite 300
                                          Garden City, New York 11530
                                          (516) 812-4570
                                          *dehrlich@staggwabnik.com*

TO:    The City of New York
Corporation Counsel
100 Church Street – 5th Floor
New York, NY  10007

Edwich Jasmin
New York City Department of Correction
75-20 Astoria Boulevard
East Elmhurst, New York 11370